IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| THOMAS EMIL SLIWINSKI,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES SALMONSON, REGINALD MICHAEL, PAUL REES, CINDY HINER, CONNIE WINNER, and UNKNOWN MEDICAL PERSONNEL,<br><br>Defendants. | CV 18-00082-H-BMM-JTJ<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Thomas Sliwinski, a prisoner proceeding without counsel, filed a memorandum of law in support of a motion for temporary restraining order. Defendants were directed to file a response to the request for temporary restraining order and have now done so. Based upon the evidence presented by Defendants the Court finds that preliminary injunctive relief is not appropriate at this time and the request should be denied.

Also pending are Mr. Sliwinski's motion to appoint an expert witness, motion for leave to file a reply, and a motion for an order requiring Defendants to supply tape recorders. Those motions will be denied.

1

## I. INJUNCTIVE RELIEF

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted). It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.* v. *A.. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001). In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance/or the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit recognizes one such "approach under

which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id.* (citations and internal quotation marks omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original). A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and shall not be granted unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).

In order to prove a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, in order to prevail, Mr. Sliwinski must show both that his medical needs were objectively serious, and that Defendants possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *Wood v. Housewright*, 900 F.2d 1332, 133741 (9th Cir. 1990) (citing cases); *Hunt v. Dental Dept.*, 865 F.2d 198, 200–01 (9th Cir. 1989); *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). It is obvious from the record that Mr. Sliwinski has serious medical needs.

Therefore, the issue in this case is whether Defendants are being deliberately indifferent to Mr. Sliwinski's serious medical needs. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court established a demanding standard for "deliberate indifference." Negligence is insufficient. *Farmer*, 511 U.S. at 835. Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted). Deliberate indifference can be established "by showing (a) a purposeful

act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

The parties generally agree regarding the nature of Mr. Sliwinski's medical condition. Mr. Sliwinski has stomach wound that will not heal. Defendants describe Mr. Sliwinski's condition as a draining sinus tract which is sometimes referred to as a fistula. Mr. Sliwinski apparently suffered stab/gunshot wounds in 2015. He was admitted to the University of California San Diego (UCSD) on October 15, 2015 and underwent a procedure to repair injuries to his abdominal wall and bowels as a result of his stomach wounds. The procedure involved, in part, a small bowel resection (removal) and lower abdominal wall reconstruction with the implantation of mesh. (Rees Aff., Doc. 39-1 at ¶¶ 11-15.)

Mr. Sliwinski was transferred to Montana State Prison (MSP) on March 7, 2017. He was first seen at MSP for his fistula on April 29, 2017. (Rees Aff., Doc. 39-1 at ¶ 18.) The medical records and Dr. Rees's affidavit indicate that Mr.

Sliwinski consulted with Dr. Raiser on February 7, 2018. Dr. Raiser recommended that MSP medical staff discuss Mr. Sliwinski's case with a tertiary center for removal of the infected mesh and abdominal wall reconstruction involving plastic surgery. (Rees Aff., Doc. 39-1 at ¶ 55.) Dr. Rees discussed this recommendation with Mr. Sliwinski and discussed facility options for consideration including University of Washington, Mayo Clinic, University of Utah, and the University of California at San Diego (UCSD). (Rees Aff., Doc. 39-1 at ¶ 57.)

Dr. Rees presented Mr. Sliwinski's case to the referral coordinator at the Mayo Clinic and then the Mayo Clinic financial department reviewed Mr. Sliwinski's case. (Rees Aff., Doc. 39-1 at ¶ 62.) Mayo Clinic informed Dr. Rees that Mayo could not accept Mr. Sliwinski because they do not accept out of state Medicaid nor its rates. (Rees Aff., Doc. 39-1 at ¶ 63.) Dr. Rees also spoke to the University of Washington and UCSD. Neither would accept Mr. Sliwinski as a surgical patient. (Rees Aff., Doc. 39-1 at ¶¶ 68-69.)

On October 12, 2018, Dr. Rees spoke with Dr. Vargo at the University of Utah School of Medicine. (Rees Aff., Doc. 39-1 at ¶ 78.) After being presented with Mr. Sliwinski's case and history, Dr. Vargo requested an updated CT scan of Mr. Sliwinski's abdomen, and all operative and imaging reports since Mr.

Sliwinski's first surgery at UCSD. (Rees Aff., Doc. 39-1 at ¶ 79.) Dr. Rees immediately sent the requested documentation to Dr. Vargo, and scheduled Mr. Sliwinski for a follow-up CT scan. (Rees Aff., Doc. 39-1 at ¶ 80.) On October 15, 2018, Mr. Sliwinski underwent another abdominal CT scan. (Rees Aff., Doc. 39-1 at ¶ 81.) That CT scan revealed that there were no changes in Mr. Sliwinski's abdominal sinus tract from his prior exam in January 31, 2018. (Rees Aff., Doc. 39-1 at ¶ 82.) Dr. Rees sent a copy of the report that accompanied the CT scan to Dr. Vargo, along with pictures of Mr. Sliwinski's sinus. (Rees Aff., Doc. 39-1 at ¶ 83.)

After reviewing Mr. Sliwinski's case, Dr. Vargo agreed to see Mr. Sliwinski. (Rees Aff., Doc. 39-1 at ¶ 84.) Mr. Sliwinski was scheduled to see Dr. Vargo and the medical team at the University of Utah on December 20, 2018, and Mr. Sliwinski was transported down to Utah in advance of his visit. (Rees Aff., Doc. 39-1 at ¶ 85.) Mr. Sliwinski was seen by the University of Utah Director of Surgery and one of the heads of their Plastic Surgery department. (Rees Aff., Doc. 39-1 at ¶ 86.) During his visit, this team of specialists examined Mr. Sliwinski. (Rees Aff., Doc. 39-1 at ¶ 87.)

After examining Mr. Sliwinski, the medical team at Utah declined to perform any surgery on Mr. Sliwinski; however, they did remove a piece of a

retained suture as they suspected that the suture may have been the cause of the sinus. (Rees Aff., Doc. 39-1 at ¶ 88.) Dr. Rees spoke with the surgeons at Utah and reviewed their records from Mr. Sliwinski's visit. (Rees Aff., Doc. 39-1 at ¶ 89.) All of the doctors agreed surgical debridement of the underlying mesh with subsequent abdominal wall reconstruction would carry a high risk of complication and failure. (Rees Aff., Doc. 39-1 at ¶ 90.)

In his record, the plastic surgeon, Dr. Myhre, specifically stated,

This gentleman is not a candidate for further abdominal wall reconstruction or mesh explant per Dr. Vargo. The CT scan suggests that the wound may be a draining tract. It is possible that the suture was a foreign body that was causing this tract and drainage and that it's removal may let this wound heal. It is also possible that there is a latent infection of the mesh, however general surgery does not believe that the benefits outweigh the risks for any invasive procedure. From a plastic surgery standpoint, Mr. Sliwinski does not need further soft tissue coverage at this point, and we can follow him and see if he improves with local wound care.

(Doc. 39-1 at 19.)

Dr. Vargo provided the following plan for Mr. Sliwinski:

I have consulted Dr. Rockwell's team in clinic. They have removed the foreign body from the wound, a protene suture. It is hoped that with the removal of the suture the wound will heal.

With regards to his abdominal wall and skin, there are not real options. His ski defect is large and to create flaps to try to get stable coverage for his abdomen would be challenging and fraught with potential complications. He has a large segment of his abdominal

> wall that is missing. He currently has a reasonable result from his mesh repair, with not evidence of hernia. For this reason, I can see no indication for reoperation of his abdomen.
>
> If the patient does ultimately end up with a chronic wound with an underlying mesh infection, he will need to have local wound care, as there are no good options for management of his abdominal wall.

(Vargo Report, Doc. 39-1 at 20.)

From his discussion with the doctors in Utah, Dr. Rees' impression was that they did not wish to operate due to the risks associated with the surgery. (Rees Aff., Doc. 39-1 at ¶ 93.)

Mr. Sliwinski has filed a motion to file a reply to Defendants' response to his request for temporary restraining order. However, in light of the medical evidence from the University of Utah, the Court does not find that a reply or preliminary injunctive relief is appropriate in this case. Mr. Sliwinski may raise additional issues regarding his medical care further in this litigation.

The Court also recognizes that Mr. Sliwinski filed an April 1, 2019 status update regarding continual bleeding from his stomach. (Doc. 48.) But that document provides further evidence that Defendants are not being deliberately indifferent to Mr. Sliwinski's condition in that Mr. Sliwinski was taken to the hospital and Dr. Rees sent photos of Mr. Sliwinski's stomach to the University of Utah to request that they reconsider doing surgery on Mr. Sliwinski. (Doc. 48.)

9

Mr. Sliwinski presents with obviously complicated medical issues. But Defendants presented sufficient evidence to establish that they are providing medical treatment to Mr. Sliwinski. Mr. Sliwinski has a medical issue which cannot be treated in Montana and Defendants have made efforts to have it treated in other facilities to no avail. There is no evidence of deliberate indifference and therefore Mr. Sliwinski has not met his burden of demonstrating a likelihood of success or that the balance of hardships tips sharply in his favor. Mr. Sliwinski's request for injunctive relief should be denied.

**II. APPOINTMENT OF EXPERT**

Mr. Sliwinski moves pursuant to Rule 706 of the Federal Rules of Evidence for the appointment of a medical expert in light of the complex medical issues in this case. An expert witness may testify to help the trier of fact determine the evidence or a fact at issue. Fed.R.Evid. 702. The district court has discretion to appoint an expert pursuant to Rule 706(a) of the Federal Rules of Evidence, which reads, in relevant part, "On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed . . ." Fed.R.Evid. 706(a); *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999). Appointment of an expert witness may generally be appropriate when "scientific, technical, or other specialized

10

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702(a).

Although Mr. Sliwinski is a prisoner proceeding in forma pauperis, the in forma pauperis statute, 28 U.S.C. § 1915, does not waive the requirement of the payment of fees or expenses for witnesses in a § 1983 prisoner civil rights action. *Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993). Rule 706 contemplates the appointment of an expert to aid the court, not to assist one of the parties. *See Trimble v. City of Phoenix Police Dep't*, 2006 WL 778697 (D.Ariz. 2006) (citation omitted) ("Reasonably construed, [Rule 706] does not contemplate the appointment of, and compensation for, an expert to aid one of the parties.").

Courts do not commonly appoint an expert pursuant to Rule 706 and usually do so only in "exceptional cases in which the ordinary adversary process does not suffice" or when a case presents compelling circumstances warranting appointment of an expert. *In re Joint E. & S. Dists. Asbestos Litigation*, 830 F.Supp. 686, 693 (E.D.N.Y. 1993); *Carranza v. Fraas*, 471 F.Supp.2d 8, 9 (D.D.C. 2007). Although there are complex medical issues in this case, Defendants have produced medical records from the University of Utah Medical Center where Mr. Sliwinski was examined by at least two independent doctors who have opined that Mr. Sliwinski is not a candidate for surgical intervention. In

light of this evidence, the Court does not find that additional experts would assist in the adjudication of this case. *See Georgia-Pacific Corp. v. United States*, 640 F.2d 328, 334-35 (Ct.Cl. 1980) (trial judge did not abuse its discretion by denying appointment of experts where judge concluded additional experts would not serve to elucidate, clarify, or enlighten him, but instead would add more divergence and opinion differences in a cumulative manner)*; see also Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997) (trier of fact's determination of deliberate indifference not so complicated that an expert was required to establish pro se inmate's case). The decision whether or not to admit expert testimony does not rest upon the existence or strength of the expert's opinion but rather, whether the expert testimony will assist the trier of fact in drawing its own conclusion as to a fact in issue. *United States v. Rahm*, 993 F.2d 1405, 1412 (9th Cir. 1993).

In light of the medical evidence presented, the Court finds that the issues regarding Mr. Sliwinski's medical care are not so complex as to require expert testimony to further assist the trier of fact.

Lastly, in a civil rights action such as this, Rule 706(b) contemplates that the expert would be paid by the parties, but here Defendants would have to bear the entire cost because Mr. Sliwinski is indigent. There is no showing that it is appropriate or fair to require the Defendants to bear the sole burden of paying an

expert witness to present Mr. Sliwinski's point of view especially when Defendants have already sent Mr. Sliwinski to independent medical providers at the University of Utah.

The court's decision not to provide funds for or appoint an expert witness in no way precludes Mr. Sliwinski from hiring and paying his own expert witness.

### III. TAPE RECORDERS

Mr. Sliwinski filed a motion for the Court to order Defendants to provide tape recorders for oral depositions of Defendants. (Doc. 47.) Defendants objected on the grounds that it would shift the cost of recording to Defendants. Mr. Sliwinski filed a reply indicating that he would have a family member provide tape recorders for the depositions. In light of this reply, the motion will be denied as moot. The parties are ordered to work together pursuant to the Federal Rules of Civil Procedure to facilitate the taking of these depositions.

Based upon the foregoing, the Court issues the following:

### ORDER

1. Mr. Sliwinski's Motion to Appoint an Expert Witness (Doc. 38) is DENIED.

2. Mr. Sliwinski's Motion for Leave to File a Reply (Doc. 44) is DENIED.

3. Mr. Sliwinski's Motion for Order to Supply Tape Recorders for Oral

Depositions (Doc. 47) is DENIED AS MOOT.

Further, the Court issues the following:

## RECOMMENDATIONS

Mr. Sliwinski's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7) should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 16th day of May, 2019.

                                              /s/ John Johnston
                                              John Johnston
                                              United States Magistrate Judge

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Mr. Sliwinski is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.